# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **DANIELLE HAYNES,** | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | **CIV. ACTION No.** |
| | § § | |
| **HOME DEPOT INC.** | § § | |
| *Defendant.* | § § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

1. Plaintiff brings this action, Danielle Haynes ("Plaintiff"), against Defendant, Home Depot Inc. ("Defendant") for violating Title VII of the Civil Rights Act of 1964, as amended and as amended.

### a. Jurisdiction

2. This Court has jurisdiction over the federal claims asserted herein in that they arise out of the United States laws. See 28 U.S.C. § 1331 and 29 U.S.C. § 2617. This Court has supplemental jurisdiction over the Texas State and common law claims under 28 U.S.C. § 1367. 17.

### a. Venue

3. Venue lies in the Northern District of Texas under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim.

Took place within this judicial district.

## EXHAUSTION OF ADMINISTRATION REMEDIES

4. Before filing the Original Complaint, Plaintiff timely filed with the United States Equal Employment Opportunity Commission ("EEOC") within the appropriate number of days, her written initial charge of discrimination based on her race and age.

    a. In conformance with the law, Plaintiff has filed this action before the expiration of ninety (90) days from the date of receiving her Notice of Rights, aka "right to sue" letter from the United States Equal Employment Opportunity Commission (EEOC)

    b. Plaintiff filed a complaint with The United States Equal Employment Opportunity Commission (EEOC). The EEOC accepted her verified complaint and filed a Discrimination charge dated November 19, 2019. All acts of discrimination by Defendant occurring 300 days to this complaint are chargeable.

    c. Plaintiff received her Notice of Rights, aka "right to sue" letter from the EEOC, on May 10, 2021. Plaintiff has exhausted all administrative remedies; therefore, all conditions precedent to Plaintiff maintaining this civil action have accrued, occurred, or been waived. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

## CONDITIONS PRECEDENT

5. To Plaintiff, all conditions precedent bringing her claims against Defendant for Discrimination, based on race and gender.

## PROTECTED CLASS MEMBERSHIP

6. Plaintiff brings this lawsuit under 42 U.S.C. §2000e et. seq. (Title VII): Title VII prohibits employers from discriminating "against any individual concerning their compensation, terms, conditions, or privileges of employment because of such

PLAINTIFF'S ORIGINAL COMPLAINT Page 2

individual's race, color, age, religion, sex or national origin. *See* 42 U.S.C. §2000e-2(a).

7. Additionally, Plaintiff sues under 42 U.S.C. §1981 and other similar statutes, prohibiting employers from race discrimination. Plaintiff identifies that she is a member of the following protected classes:

   a. African American female
   b. Over the age of 40
   c. filed a complaint with EEOC concerning unlawful employment conditions; and
   d. filed her Original Complaint with this Court.

8. Plaintiff identifies that she is a member of one or more of the protected classes specified in paragraphs above under Federal statutes 21 Texas Labor Code and other similar statutes.

## PARTIES AND SERVICE

9. Plaintiff Danielle Haynes is an individual who is a resident of Anna, Texas. She is an "employee" as that term is defined by 42 U.S.C. §2000 (f), 29 U.S.C. §630(f), and 29 U.S.C. §203(e)(1)

10. Defendant Home Depot Inc. may be served with citation by serving its registered agent,

## BACKGROUND FACTS

. Plaintiff is an employee of Defendant at its retail store 6804 located at 6000 Skillman Street, Dallas, Texas 75231 ("Skillman store"). Plaintiff serves as Assistant Store Manager at the Skillman store. She has worked at the Skillman store since 2011.

8. At all relevant times the Plaintiff was employed by Defendant.

9. Defendant's agent, BRYAN KAESER, is the Store Manager at the Skillman store and the supervisor for Plaintiff.

10. On May 15, 2018, a Specialty Tuesday meeting was held between Plaintiff, Kaeser, and Department Supervisor Pam Miller.

PLAINTIFF'S ORIGINAL COMPLAINT Page 3

11. Kaeser questioned Plaintiff about placing a drill display at the front of the hardware showroom. Plaintiff responded that the drill display had remained in the exact location since she was hired. Kaeser, unsatisfied with Plaintiff's response, took it upon himself to administer corporal punishment and kicked Plaintiff in her leg. He, again, demanded to know why the drill display was placed just outside the showroom. Plaintiff provided the same response. Kaeser, still unsatisfied with the response, administered more punishment, again kicking the Plaintiff for a second time. Plaintiff, feeling belittled, attempted to provide an explanation. However, Kaeser would not accept any reason.

12. Plaintiff, humiliated by Kaeser's treatment in the presence of a subordinate, stopped speaking, and Kaeser kicked Plaintiff for a third time. Plaintiff asked Kaeser to stop kicking her because it hurt. Kaeser again kicked the Plaintiff for a fourth time. Plaintiff, in anticipation of another strike, lifted her leg to block an incoming kick. Kaeser again kicked the Plaintiff, asking why she was lifting her leg. Plaintiff responded that the kicks hurt her. Kaeser continued to kick the Plaintiff and taunted her about lifting her leg to defend the strikes. Plaintiff backed up to avoid Kaeser's assault. Kaeser continued kicking Plaintiff three to four additional times and verbally humiliating her to feel like a wounded, scared animal.

13. Kaeser kicked Plaintiff an approximate total of eight to ten times in front of a co-worker while verbally mocking her for her attempts to protect herself. Kaeser, then, switched topics away from the drill display at the showroom to talk about the hardware merchandise.

14. On May 21, 2018, District Human Resources Manager AMBER BLAIR ("DHRM Blair") contacted Plaintiff to discuss the employment abuse incident on May 14, 2018. Plaintiff provided details of what happened, the humiliation she felt, and the fallout from the incident, including loss of sleep. Plaintiff informed DHRM Blair that she felt bullied and targeted. Plaintiff explained to DHRM Blair that she considered Kaeser her mentor with the company she struggles with accepting Kaeser's behavior.

15. On May 22, 2018, District Manager MELISSA AKINS ("DM Akins") texted Plaintiff requesting that Plaintiff call DM Akins. Plaintiff called DM Akins and gave an overview of the abuse that occurred. Plaintiff shared how she felt. DM Akins responded that Plaintiff was owed an apology and suggested that Plaintiff's duty to repair the relationship between her and Kaeser. DM Akins ignored Plaintiff's concerns and

PLAINTIFF'S ORIGINAL COMPLAINT Page 4

allegations regarding Store Manager Kaeser.

16. On May 23, 2018, Kaeser calls Plaintiff and requests that they have lunch. Plaintiff and Kaeser went to lunch at Norma's Café. At lunch, Kaeser apologized for his abusive and humiliating treatment. Plaintiff expressed her feelings regarding the humiliating situation and the fallout she has felt. After Plaintiff poured out her heart, Kaeser said no further remorse. Plaintiff had no further discussion with Kaeser about the incident.

17. On May 24, 2018, DM Akins called Plaintiff into her office; DHRM Blair was also present. Plaintiff was asked about her lunch with Kaeser. Plaintiff explained that the lunch was awkward, and she felt anxiety going to work as if she must "walk on eggshells." DM Akins expressed that Plaintiff was in a good place with the Skillman store and once more urged Plaintiff to repair her relationship with Kaeser. The conversation continued into discussing expectations with mentor-like relationships. DHRM Blair asked Plaintiff if she needed anything from them. Plaintiff expressed that her loss of sleep continues, and she does not know what to do. DM Akins then said that she considered the case closed.

18. On May 25, 2018, Plaintiff called DHRM Blair to express that she did not consider the matter with Kaeser closed. DHRM Blair informed Plaintiff that the case was not closed, and the issue would continue to be monitored. Over the next few days, Plaintiff became ostracized by the upper management team at the Skillman store.

19. On June 1, 2018, Plaintiff decided to go up the chain of command and hierarchy and emailed DONNA M. WYATT, TIM HOURIGAN, and DAVE REBTOY a synopsis of the May 15, 2018, incident and the subsequent events and conversations with the Store Manager Bryan Kaeser, District Manager Melissa Akins and District Human Resources Manager Amber Blair.

20. On June 5, 2018, ERIK DELUNA, Southwest Human Resources Manager for Home Depot, called Plaintiff to discuss the incident and subsequent fallout.

21. On June 6, 2018, Kaeser entered a note in the Plaintiff's employee personnel file regarding a sub-par performance review.

22. On June 20, 2018, Plaintiff emailed Mr. DeLuna to follow up on their previous conversation and

PLAINTIFF'S ORIGINAL COMPLAINT Page 5

express that she believed she was being retaliated against. Mr. DeLuna called Plaintiff soon after to say he would be vising the store that day to meet with Kaeser and DM Akins. After the meeting between Mr. DeLuna, Kaeser, and DM Akins, the management staff at the Skillman store further isolated and excluded Plaintiff.

23. On June 25, 2018, Plaintiff informed Kaeser that a new department supervisor, J.O.Y., was disrespectful and unsuccessfully meeting metrics after weeks of training. The following day Kaeser held a meeting with the Plaintiff's department sans the Plaintiff. During the June 26, 2018, meeting, Joy alleged things regarding Plaintiff that subsequently led to an investigation, requiring Plaintiff to defend herself against these allegations. On the same day, the study into May 25, 2018, concluded.

24. Plaintiff was denied multiple requests for a transfer to a different location following the investigation into the May 15, 2018, incident by DHRM Blair. Additionally, Plaintiff's close co-workers were terminated or transferred to a different location, including an employee who pulled the video to confirm that the incident took place and was captured on video surveillance.

25. Since the conclusion of the investigation of the May 15, 2018, incident, Plaintiff has received Performance Disciplinary Write-ups for poor performance and a Disciplinary Notice for an alleged incident that occurred several months prior. Kaeser's additional notes have been made in Plaintiff's personnel file regarding incidents that were never fully developed or denied by Plaintiff without a formal investigation. The mid-year review of Plaintiff reflected the most negative review she received in her previous eight years of employment with the Home Depot.

26. Kaeser remains employed with the Home Depot, and Plaintiff is unaware of any disciplinary action that has been taken against Kaeser following the conclusion of the Home Depot's investigation. The Plaintiff believes the management team in place with the Home Depot, tasked to provide the proper channel to report the harassing activity, ignored her calls for assistance and help, including but not limited to requesting a transfer to a different store location or seeking help for her loss of sleep due to the humiliation inflicted on her by the Defendant.

## HOSTILE WORK ENVIRONMENT

**A Hostile Work Environment**

27. Plaintiff restates and incorporates paragraph 1 through as if fully set forth herein.

28  Defendant's agent's actions, including but not limited to the repetitive kicking of the Plaintiff, demonstrated severe conduct of an intimidating, hostile, or abusive nature. Defendant continued to allow Kaesar to supervise Plaintiff, and Kaeser gave Plaintiff a bad performance review. Before this review, Defendant had designated Plaintiff as a "high performer." Defendant's actions caused Plaintiff emotional distress, anxiety, and worry.

. Defendant's actions are willful, deliberate, and reckless disregard of Plaintiff's rights in violation of Title VII of the Civil Rights act.

Plaintiff suffered damages as a result of Defendant's unlawful actions.

29  Plaintiff seeks all damages allowed under the law, including:

30. Injunctive relief.
31. Actual damages.

32. Equitable relief, including reinstatement to the previous position.

33. Punitive damages.

34. Court costs.

35. Reasonable attorney's fees.

36. Pre- and Post-judgment interest at the maximum rate allowed by law.

## ATTORNEYS' FEES AND COSTS

Plaintiff incorporates each of the preceding paragraphs.

To redress Plaintiff's injuries based on Defendant's and Defendant's agent's actions, Plaintiff has retained the undersigned counsel to represent her in this action.

## JURY DEMAND

Plaintiff demands a trial by jury, and the necessary fees have been tendered.

## REQUESTS FOR DISCLOSURE

Under rule 26 of Federal Civil Procedure, Plaintiff requests that Defendant disclose, within 14 days of service of this request, the information or material described in the above-referenced rule.

## CONCLUSION

WHEREFORE, premises considered, Plaintiff respectfully requests that Defendant be cited to appear and answer and that upon the final trial of this matter, that all the relief sought to be granted to Plaintiff, and any other such further relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Andrew A Dunlap

Andrew A. Dunlap (lead counsel)
TBN 06231700
6565 N. McArthur Boulevard Suite 140
Irving, Texas 75039-2478
972-807-6357
214-614-5160 telecopy
andrew@dunlapattorneys.com

**ATTORNEY FOR THE PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2021, I electronically submitted the preceding document with the clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case files system Court. The electronic case files system sent a "Notice of Electronic Filing" to all individuals who have consented in writing to accept this notice as service.

/s/ Andrew Dunlap